**[Cite as *State v. Curtis*, 2020-Ohio-4152.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28512 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3784 |
| | : | |
| JAMAICA CURTIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Jamaica Curtis, appeals from her conviction on two counts of nonsupport of dependents and the court's denial of her motion for new trial. In support of her appeal, Curtis contends that the trial court erred by failing to consider her disability as evidence of her innocence.

**{¶ 2}** After reviewing the record, we conclude that Curtis's conviction for nonsupport under R.C. 2919.21(B) was not against the manifest weight of the evidence. The evidence indicated that Curtis did not support her children as required by court order, and Curtis also failed to prove her affirmative defense under R.C. 2919.21(D). In addition, Curtis's trial counsel did not render ineffective assistance of counsel by failing to make a Crim.R. 29 motion for acquittal, which is based on insufficiency of the evidence. Such a motion would not have changed the outcome of the trial because Curtis's conviction was not against the manifest weight of the evidence, which subsumes the issue of sufficiency. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** On December 8, 2017, an indictment was filed charging Curtis with two counts of nonsupport of dependents between August 1, 2015 and July 31, 2017. The charges were both fifth-degree felonies and involved her children, L.C. and H.C. On October 12, 2018, Curtis filed a waiver of her right to a jury trial and agreed to have her case tried by the court.

**{¶ 4}** On November 1, 2018, the parties appeared for a bench trial. At that time, they agreed to admit State's Exs. 1-6 and Defendant's Ex. A. Transcript of Proceedings (Bench Trial) ("Bench Tr."), p. 4. The State's exhibits included records pertaining to the

underlying divorce case, child custody and child support, the setting of child support, and a printout from the support enforcement agency showing payments and lack of payments. *Id.* Curtis's exhibit contained a number of medical records.

{¶ 5} At trial, the parties also agreed to refer Curtis for intervention in lieu of conviction ("ILC") and to have the court delay reviewing the exhibits until the ILC assessment was returned. If the assessment indicated Curtis was an appropriate candidate for ILC, the court would not need to review the exhibits; if she was not an appropriate candidate, additional medical records might be needed, and the record would be supplemented. The court would then be asked to move forward on the bench trial. *Id.* at p. 5.

{¶ 6} The trial court then referred Curtis for an ILC assessment and report, scheduled Curtis to return to court on November 28, 2018, and admitted the exhibits. *Id.* at p. 6-7. At that point, the State made an opening statement outlining the terms of the indictment. *Id.* at p. 7-8. The defense, however, reserved the right to comment briefly on the medical records if the parties reached the trial stage. *Id.* at p. 9. The court agreed, and further both sides would be given the opportunity to make oral closing arguments and submit written briefs. *Id.* After these discussions occurred, both sides rested their cases. *Id.* at p. 10. Later that day, Curtis filed a motion for ILC, contending that her drug and alcohol use was a factor leading to her criminal offenses.

{¶ 7} On November 28, 2018, the parties again appeared before the court, and the court noted that Curtis was eligible for intervention in lieu of conviction. Transcript of Proceeding (ILC Report, Motion Hearing, Sentencing) ("ILC Tr."), p. 4. The court commented, though, that before it granted the motion, Curtis would be required to plead

guilty to both counts. However, the guilty entries would not be filed, so that Curtis could complete the ILC program. In that event, the case would be dismissed. But, if Curtis failed to complete the program, the court would proceed immediately to sentencing. *Id.*

{¶ 8} After the court advised Curtis of her rights, Curtis pled guilty to the charges. *Id.* at p. 4-9. The court accepted the plea, advised Curtis of the conditions for compliance with the ILC program, and ordered her to pay restitution of $8,558.91 to Ohio Child Support Central in a monthly amount to be decided by that agency. *Id.* at p. 10-11.

{¶ 9} No notice of further appearances is in the record, but on January 4, 2019, the court filed an entry stating that Curtis and her attorney had appeared at the Court's normal docket on December 5, 2019, and had asked to submit additional documentation before the court rendered its decision. The court then gave Curtis until January 18, 2019, to submit further documentation. Nothing more was filed thereafter. As a result, the court filed a bench trial decision on March 21, 2019, concluding that Curtis failed to pay support as required between the dates alleged in the indictment. Bench Trial Decision, p. 1-2.

{¶ 10} The court considered whether Curtis had proven an affirmative defense to the charges, based on inability to pay and having made payment within her means. After reviewing about 1,500 pages of medical records, the court concluded that Curtis had been on and off of opioids since 2013, had a dependency on opioids, and that some of her medical issues were related to opioid use. *Id.* at p. 4. In addition, the court observed that despite having medical issues, Curtis had worked in 2013 and 2014 to support her children. However, no evidence was presented about what had changed so that she could no longer support them in 2015. *Id.* at p. 4-5. Based on all the evidence presented (and lack of evidence), the court concluded that Curtis failed to provide

sufficient evidence of her defense under R.C. 2919.21(D) and found her guilty of the charges in the indictment.

{¶ 11} On May 30, 2019, Curtis filed a motion for new trial, based on the fact that she had received a decision on April 23, 2019, from an administrative law judge. The decision found that Curtis had been medically disabled since September 17, 2015, and was entitled to receive full disability and disability insurance benefits. Curtis attached a copy of the decision to her motion. After the State responded, the court set a hearing for July 25, 2019.

{¶ 12} At the hearing, Curtis conceded that her application for Social Security benefits was filed in September 2015 and that no additional medical documents were relied on in the Supplemental Social Security ("SSI") decision other than those that had been submitted to the trial court for its decision on the affirmative defense. ILC Tr. at p. 16-17. Counsel for both sides also acknowledged that they were not able to find authority indicating that the trial court would be bound by the SSI decision. *Id*. at p. 18.

{¶ 13} On August 6, 2019, the court overruled the motion for new trial. The court then sentenced Curtis to up to five years community control, with various conditions, including payment of $8,558.91 to the Ohio Child Support Payment Central. Curtis timely appealed from the final order, and this case is ready for resolution.

II.

{¶ 14} Curtis's sole assignment of error states:

The Trial Court Failed to Properly Consider the Manifest Evidence of the Defendant-Appellant's Disability as Evidence of Innocence.

{¶ 15} Although Curtis's assignment of error alleges a manifest weight challenge, her argument is primarily based on trial counsel's failure to move for a "directed verdict" (Crim.R. 29 acquittal). Curtis alleges that the outcome of the trial would have been different if such a motion had been made.

{¶ 16} Before we discuss the merits of this contention, we should note that this case presents an unusual procedural posture. At the trial, the parties did not present witnesses, but only stipulated to some documents. However, the court said that it would not consider these documents because both sides had agreed that Curtis should be referred for an ILC assessment. The court was amenable, and later granted the ILC motion on a finding that Curtis was an appropriate candidate. The court also had Curtis plead guilty in court, and Curtis signed the plea forms. In addition, the court accepted the plea. ILC Tr. at p. 9-10. At that time, the court stated that it would hold the guilty plea forms in abeyance and ordered various ILC conditions that Curtis was to follow. The court never filed an entry granting the ILC motion, however. The next thing that happened was the court's grant of time for Curtis to file additional information, which Curtis failed to do. The court then entered its bench trial decision finding Curtis guilty as charged.

{¶ 17} There was no further discussion of ILC in the trial court and no indication whether Curtis failed to complete ILC. Instead, the court considered the evidence previously presented and found Curtis guilty. During the rest of the case occurring after the ILC hearing, including the oral hearing on the motion for new trial and sentencing, Curtis did not object to the procedure that was followed, and did not, herself, mention ILC.

{¶ 18} On consideration, we conclude that the court's oral statements granting ILC

(and accepting the guilty pleas) were of no effect because the court never filed an entry granting ILC. In Ohio, "courts speak only through their journal entries." *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 455, 727 N.E.2d 907 (2000). *Accord State v. Smith*, 2d Dist. Montgomery No. 26217, 2015-Ohio-700, ¶ 10 ("a court speaks only through its journal entries, not through its oral pronouncements"). As a result, ILC was never granted, and the status of the case returned to where it was before the referral for the ILC assessment. Consistent with its statement at trial that it would allow further evidence, the court gave Curtis an opportunity to submit more evidence. However, Curtis elected not to file anything thereafter, and the court correctly rendered a decision on the merits of the case.

{¶ 19} Turning to Curtis's assignment of error, we note that "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In this situation, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 20} Typically, in manifest weight review, we defer to trial court decisions on

credibility issues, as those courts are in the best position to make that determination. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, in this case, there were no credibility decisions, because the case was decided solely on documents that were submitted.

{¶ 21} In her brief, Curtis makes no specific argument concerning why the judgment was against the manifest weight of the evidence, and we conclude, after reviewing the record, that it was not.

{¶ 22} Curtis was charged with having violated R.C. 2919.19(B), which provides that "(1) No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person: (a) Is legally obligated to support * * *." R.C. 2919.21(G)(1) elevates the penalty to a fifth-degree felony where, as here, "the offender has failed to provide support under division (A)(2) or (B) of this section for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive * * *."

{¶ 23} The information submitted to the trial court leaves no doubt that Curtis failed to pay child support in the required amounts and during the claimed time periods, and Curtis therefore was guilty of having violated R.C. 2919.21(B) as charged. In fact, Curtis did not dispute this at trial, nor has she disputed it here. Instead, her defense was that she was unable to work during the time in question. Concerning such a defense, R.C. 2919.21(D) provides:

It is an affirmative defense to a charge of failure to provide adequate support under division (A) of this section or a charge of failure to provide support established by a court order under division (B) of this section that

the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means.

{¶ 24} "An affirmative defense operates to relieve an accused of criminal liability. 'The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, is upon the accused.' " *State v. Jones*, 2d Dist. Montgomery No. 20162, 2004-Ohio-4519, ¶ 25, quoting R.C. 2901.05(A).

{¶ 25} In *Jones*, the defendant claimed the trial court should have given the jury an affirmative defense instruction because he was destitute and his claimed medical condition prevented him from working. *Id.* at ¶ 26. We rejected that contention. We noted that this defense requires proof of both parts of R.C. 2919.21(D), and that "[b]y its terms, R.C. 2929.21(D) requires some evidence from which the jury could reasonably find that Defendant 'did provide the support that was within the accused's ability and means.' " *Id.* at ¶ 28. We described this as "some evidence that a modicum of support was provided." *Id.* Because the defendant in that case provided no support during the pertinent time period, we concluded that he had not been entitled to an instruction on the defense.

{¶ 26} Here, Curtis failed to present any evidence as to whether the support was within her means, but she did provide evidence of a modicum of support. The time period in question was August 1, 2015 through July 31, 2017. During that time, Curtis paid $1,537.85 in support, which was support for almost 17 weeks as opposed to nonsupport for more than 87 weeks. This amount could be classified as a modicum of support and could satisfy that part of the statutory requirement.

{¶ 27} The burden of proof on this issue was not satisfied, however, because Curtis offered no evidence of whether she tried to obtain work during the time when she failed to provide support, nor did she submit evidence as to what income she did have and how she supported herself from 2015 to 2017. The trial court therefore could not have concluded, in the absence of proof, whether the amount Curtis did pay was the support that was within her means.

{¶ 28} Regarding the second requirement in R.C. 2919.21(B), which is that Curtis was unable to provide support, Curtis's excuse was that her medical conditions prevented her from working. As noted above, the trial court rejected this argument because Curtis was able to work with the same medical conditions in 2013 and 2014 and provided no reason why she could not work in 2015 through 2017. We agree that there was no explanation of this in the record.[1]

{¶ 29} Specifically, between December 2013 and July 31, 2015 (before the dates of non-payment alleged in the indictment), Curtis had 16 hospital visits or admissions. At the time, Curtis was employed. During these visits, she was treated for various conditions, including:

(1) (December 2013) – sepsis secondary to acute pyelonephritis (a kidney infection causing an eight-day stay);

---

[1] Before discussing the medical records, we note that in its decision, the trial court said it had reviewed 1,500 pages of medical records. See Bench Trial Decision (Mar. 21, 2019) at p. 3. However, the only medical information in the record was in Defendant's Ex. A, which contains 465 pages of medical records. In addition to Ex. A, the trial court referred to Ex. B in its decision. However, there is no record of such a document having been admitted. The only documents admitted at trial or at any place in the record were Defendant's Ex. A, and several State exhibits, and these were the only documents forwarded to the court's property room. Nonetheless, we have reviewed all the medical records in Ex. A, and they provide adequate support for the trial court's decision.

(2) (March 2014) – left facial swelling (treated in emergency room ("ER) and released that day);

(3) (April 14, 2014) – nasal surgery for chronic sinusitis (outpatient surgery);

(4) (April 30, 2014) – post-op bleeding from surgery (treated in ER and released);

(5) (May 12, 2014) – five day stay for abdominal pain and removal of gallbladder;

(6) (May 21, 2014) – 11-day stay for abdominal pain following altercation with patient at work, plus removal of appendix;

(7) (July 2014) – complaint of abdominal pain (treated in the ER and released);

(8) (August 2014) – right upper quadrant abdominal pain (treated in ER and released);

(9) (September 2014) – chronic abdominal pain (treated in ER and released);

(10) (October 2014) – pelvic ultrasound for endometriosis, with no acute findings;

(11) (November 3, 2014) – abdominal pain (treated in ER and released);

(12) (November 9, 2014) – six-day admission for abdominal pain, with no cause found and referred for pain management;

(13) (December 2014) – abdominal pain (treated in ER and released,

and given limited pain medication);

(14) (January 3, 2015) – lower right jaw pain (treated in ER and released);

(15) (January 13, 2015) – continued abdominal pain (treated in ER and released); and

(16) (April 2015) – abdominal pain, (treated in ER and released; no further workup warranted).

Defendant's Ex. A, p. 1-29, 63-68, 70-79, 83-88, 93-119, 123-148, 167-175,180-186, 192-199, 208-210, 212-220, 227-257, 262-276, 277-284, 284-294, and 295-303.

{¶ 30} Between August 1, 2015 and July 31, 2017 (the dates of nonsupport alleged in the complaint), Curtis had fewer hospital visits (11), and for less significant medical issues.   Specifically, she had the following medical problems and admissions:

(1) (August 2015) – left knee pain (given Percocet in ER and released);

(2) (September 2015) – outpatient diagnostic and surgical arthroscopy left knee;

(3) (May 6, 2016) – complaint of right-sided hip pain after falling in the shower (negative x-rays of hip and pelvis; treated in ER and released);

(4) (May 12, 2016) – left anterior rib pain with no known injury (negative chest x-ray; treated in the ER and released);

(5) (May 28, 2016) – right-sided flank pain and urinary complaints (treated at ER and released with oral antibiotics and pain medication);

(6) (June 2016) – two-day admission for continued left lower

quadrant abdominal pain;

(7) (November 2016) – pain in left knee (MRI on knee; treated in ER and released);

(8) (December 2016) – outpatient left knee diagnostic and surgical arthroscopy;

(9) January 2017 – outpatient nasal surgery;

(10) March 2017 – complaint of "abdominal migraine" (treated in ER and released); and

(11) May 2017 – complaint of back pain with no injury (negative x-rays; treated in ER with pain medication and released).

Ex. A at p. 308-313, 315-317, 323-330, 335-343, 344-352, 359-365, 371-382, 385-404, and 411-418.   As indicated, the medical problems and treatment during this period were less serious than the ones when Curtis was working, and the records lack any indication of why she could not work as she had before.

{¶ 31} According to the trial court, there was evidence of Curtis's on and off dependency on opioids, and this is supported in the record as well.   *See* Ex. A at p. 257, 262, 264, 290, 330, 397, 400-405.   However, the trial court stressed that addiction does not excuse failure to pay support.   We agree.   Courts have held in the context of adoption proceedings that voluntary decisions to use drugs do not provide a justifiable excuse for failing to pay child support.   *E.g., In re Adoption of K.N.W.*, 4th Dist. Athens No. 15CA36, 2016-Ohio-5863, ¶ 4.

{¶ 32} We have not found similar authority concerning the affirmative defense in R.C. 2919.21(D), but the duty to support in these two situations is the same.   The

Supreme Court of Ohio has also said, in the context of an adoption case, that a parent does not violate the duty of support under R.C. 2919.21 if the court having jurisdiction over the children has reduced the parental support obligation to zero or has eliminated the obligation. *See In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 38. Notably, Curtis could have asked the divorce court to modify her support obligation. However, nothing in the record indicates that Curtis availed herself of this option. Furthermore, as the trial court observed, Curtis used drugs from 2013 onward and was still able to pay some support in 2013 and 2014.

{¶ 33} As we noted, the medical records did not convince the trial court that Curtis was unable to work. Again, this decision was not against the manifest weight of the evidence. While the medical records showed that Curtis went to the hospital numerous times during the relevant time period, there were a number of visits for various ailments that were not supported by objective findings. For example, in a May 6, 2016 emergency room visit to Sycamore Hospital, Curtis claimed she had fallen in the shower but had negative x-rays. Nonetheless, she was prescribed 90 Percocet pills. Ex. A at p. 325-327. Less than two weeks later, Curtis appeared at a different hospital (Southview), with a claim of rib pain, without a specified cause of injury. *Id.* at p. 337.

{¶ 34} In a March 2017 visit alleging "abdominal migraines," the examiner noted that Curtis had come to the emergency department "on numerous occasions with negative imaging and labs to include 12+ CT scans over the past 2-3 years." *Id.* at p. 397. At that time, Curtis was taking both Percocet and Tramadol for pain. *Id.* at p. 403.

{¶ 35} The examiner further noted, after chart review, that:

Pt follows with Dr Courtney Campbell MD at Ohio State for

Gastroenterology specialist on 3/7/2017 for workup and evaluation. It was noted on chart review that patient has had these symptoms for 3+ years and is unresponsive to PO Narcotics i.e. Norco or Percocet as well as NSAIDS, Zofran, Bentyl and the only thing that has worked is Morphine and Dilaudid IV. On discharge Dr Campbell * * * [gave Curtis] an integrative medicine referral for alternative pain management strategies. Dr Campbell suggested no further CT/AP imaging indicated as patient has had 12+ CT images in the past 2-3 years which were negative and it is unlikely to further utility. Pt last ED visit for the abdominal pain was at MVA on 3/14/2017 for similar presentation and was treated with IV Haldol with no success and additional Morphine and Zofran with relief and was advised outpatient follow-up as all labs studies at that time were non-acute.

Ex. A at p. 404-405. On that visit, after Curtis was given Dilaudid twice in the emergency room, she was released with a prescription for Tramadol for pain. *Id.* at 405. Curtis also appeared again at a different emergency room in May 2017 for pain in her left back and shoulder, but reported no injury, trauma, or fall. *Id.* at p. 413. X-rays were negative. Curtis was given Valium but claimed no relief and was then given morphine. *Id.* at 418. She was released with prescriptions for various drugs, including Tramadol. *Id.* These records indicate drug-seeking activity and support the trial court's conclusions.

{¶ 36} Furthermore, even if this had been otherwise, there was simply no explanation of why Curtis could not work during the pertinent time period. Accordingly, we cannot find that this is the exceptional case in which the evidence weighed heavily against the defendant's conviction.

{¶ 37} The second argument that Curtis makes is that trial counsel rendered ineffective assistance by failing to file a Crim.R. 29 motion for acquittal.

{¶ 38} "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

{¶ 39} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components.   First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id.* at 687.   "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   *Id.* at 691.

{¶ 40} In *Strickland,* the court also stressed that "[j]udicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. * * * A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 41} Curtis's ineffective assistance claim is based on the failure to file a Crim.R. 29(A) motion for acquittal. This subsection of Crim.R. 29 provides that:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶ 42} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. *See also State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 14 (2d Dist.).

{¶ 43} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541.

In this situation, we apply the following test:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated* in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).

{¶ 44} Even if trial counsel had filed a motion under Crim.R. 29, it would not have changed the outcome. Specifically, "[a]lthough sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 45} Because we have already concluded that the conviction was not against the manifest weight of the evidence, a motion arguing sufficiency could not possibly have

been successful. As a result, trial counsel did not render ineffective assistance of counsel by failing to make such a motion.

{¶ 46} Based on the preceding discussion, Curtis's sole assignment of error is overruled.

{¶ 47} As a final matter, we note that Curtis has not raised any error concerning the trial court's failure to grant her motion for new trial. In fact, this subject is not mentioned in Curtis's brief, nor has she mentioned the SSI decision. Therefore, we will not consider the refusal to grant the motion for new trial.

III. Conclusion

{¶ 48} Curtis's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Mark J. Bamberger
Hon. Dennis J. Adkins