[Cite as *State v. Gross*, 2021-Ohio-2946.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29022 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-1402 |
| | : | |
| NATHAN K. GROSS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of August, 2021.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, Prosecuting Attorney, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
  Attorney for Plaintiff-Appellee

V. GAYLE MILLER, Atty. Reg. No. 0091528, 120 West Second Street, Suite 501, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Nathan K. Gross appeals from his conviction for domestic violence in the Kettering Municipal Court. He argues that his conviction was against the manifest weight of the evidence and that his trial counsel was ineffective for not filing a Crim.R. 29 motion for acquittal. We find no merit in the evidentiary challenge or the ineffective-assistance claim, so we affirm.

## I. Factual and Procedural Background

{¶ 2} In early December 2020, Gross was arrested and charged with one count of domestic violence, in violation of R.C. 2919.25, a first-degree misdemeanor, for shoving Renee Benedetti's head into a wall. A bench trial was held the same month, at which the following evidence was presented.

{¶ 3} Benedetti testified that she and Gross lived together with their 18-month-old son in a rented home in Kettering, Ohio. On December 4, 2020, she got home around 6 a.m., woke Gross, and went to bed. That afternoon, around 2 p.m., Benedetti said that she was asleep in bed when she was awakened by Gross trying to have sex with her. She tried to push him off. He told her that she smelled and needed to take a shower. They started arguing. Benedetti's cell phone rang, and she answered it. Gross told her to hang up, and when she refused, he punched her in the stomach hard enough to knock her down. Benedetti took the baby into the bathroom to take a shower. Gross stood in the doorway, and they continued to argue, making "nasty comments" to each other. (Tr. 15.) She testified that, when she bent down to undress the baby, Gross shoved her head into the shower wall. The area near her right temple hit the wall. Gross left, and Benedetti took a shower.

{¶ 4} She then left the house with the baby, walking away on foot. The two were picked up by a passerby, who gave them a ride to a nearby motel. Benedetti called the police, officers met her at the motel, and she told them what had happened. Officer Shiloh Colon testified that she saw bruising on the right side of Benedetti's head and took photographs, which were presented at trial and showed bruising and swelling near Benedetti's right temple. Benedetti told Officer Colon that "her head struck the shower on her right side." (Tr. 97.) Colon also said that Benedetti complained to her of stomach pain. Officer Michael Martin also testified that he talked to Benedetti at the motel. He said that she was "upset," "crying," and "very emotional." (Tr. 115.) She told him that she had been raped and punched in the stomach.

{¶ 5} Detective Ryan Vandegrift was assigned to investigate. He testified that Benedetti had told him that she had been raped that morning and that she had her head smashed into a wall. He said that a Ring camera at the house captured several short videos of events outside on December 4. One video, taken from 3:45 to 4:00 a.m., showed Benedetti and Gross walking back and forth from the driveway to the area of the entrance of their apartment, carrying items into the house. Another, taken around 5:30 or 5:45 p.m., showed Benedetti walking from the entrance of the apartment down the driveway toward the street, wearing a towel around her body and a towel on her head. A final video, taken around 5:40 or 5:55 p.m., showed Gross walking back up the driveway from the street.

{¶ 6} The person who had called Benedetti earlier was her friend Fred Combs. She did not hang up the phone, so Combs heard the argument. He testified that Gross sounded "very irate" and was "yelling and screaming." (Tr. 105-106, 109.) Combs could hear that Benedetti was crying and heard Gross say things to her like, "[y]ou stupid fucking

bitch" and "[y]ou're a fucking whore." (Tr. 108-109.)

{¶ 7} Gross took the stand in his own defense and painted a very different picture of the events. He denied hurting Benedetti. Gross said that Benedetti had been gone for several days and that he had been caring for the baby. She came into the house around 3:30 a.m., woke him, and told him to help her bring in from the car things she had bought. Benedetti climbed into bed fully clothed and left Gross to finish the unloading. Gross said that around 6:30 a.m., he woke Benedetti and they had consensual sex until the baby woke up. Gross got up with the baby, and Benedetti stayed in bed. According to Gross, Benedetti got up between 4 and 4:30 p.m. that afternoon. At some point, he told her that her hair smelled and they argued. Gross said that she hit him in the head with her cell phone, and he presented photos that he said showed injuries she had caused. Gross called 911 but hung up before making a report. He also said that he did not punch Benedetti in the stomach but pushed her away and that she stumbled and fell. Gross said that around 5:30 p.m. he went out to buy cigarettes, while Benedetti took a shower. Gross also testified that, while Benedetti was on the phone with Combs, she was merely acting like he was attacking her, when he was actually in another room. Gross said that he did not know how she got the bruise on her head.

{¶ 8} The trial court noted the two very different versions of the events in Benedetti's and Gross's testimony. Because Benedetti's version was corroborated by other evidence, though, the court found Gross guilty. The court sentenced Gross to 180 days in jail, suspending 90 days and giving him credit for 25 days served.

{¶ 9} Gross appeals.

**II. Analysis**

{¶ **10**} Gross presents two assignments of error.

## A. Weight of the evidence

{¶ **11**} The first assignment of error alleges:

THE CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ **12**} Gross and Benedetti presented differing versions of the events. Gross argues that his version was more credible.

{¶ **13**} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Typically, in manifest weight review, we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination." *State v. Curtis*, 2020-Ohio-4152, 157 N.E.3d 879, ¶ 20 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ **14**} Gross was found guilty of violating R.C. 2919.25(A), which provides that

"[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 15} Gross argues that his story was more credible than Benedetti's. He points out that the testimony of Benedetti totally contrasted with that of Gross, as well as that of the video evidence. Benedetti testified that she arrived home around 6:00 a.m., but the video evidence testified to by Detective Vandegrift indicated that she was on the premises around 3:45 a.m. Further, Benedetti testified that she showered in the morning after their child awoke, but the testimony of Vandegrift on the video evidence was that Benedetti had been outside of the house wearing a towel on her body and another on her head at 5:45 p.m., which was consistent with Gross's testimony that Benedetti showered while he was at the store. Benedetti testified that, while she was in the bathroom, Gross slammed her head into the shower wall, contrary to Gross's testimony. Based on the conflicting testimony, Gross says, it was against the manifest weight of the evidence for the trial court to conclude that he had any interaction with Benedetti while she was showering.

{¶ 16} "[R]esolution of evidentiary conflicts is the province of the trial court." *State v. Chatman*, 2d Dist. Montgomery No. 20595, 2005-Ohio-1930, ¶ 23. The trial court here plainly believed Benedetti over Gross. Benedetti testified that, during an argument, Gross punched her in the stomach and then smashed the right side of her head into the shower wall. Her testimony was consistent with the bruising and swelling that was seen and photographed on her right temple. It was also supported by Fred Combs's testimony that he listened to Gross yell and scream at Benedetti.

{¶ 17} While there were conflicts in the evidence, we do not think that this is an "exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Benedetti's version of events was plausible and supported by the other evidence. We are not convinced that the trial court lost its way by crediting it. Gross's conviction was not against the manifest weight of the evidence.

{¶ 18} The first assignment of error is overruled.

### B. Ineffective assistance of counsel

{¶ 19} The second assignment of error alleges:

THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION AND ARTICLE 1 § 10 OF THE OHIO CONSTITUTION DUE TO FAILURE OF THE DEFENSE COUNSEL TO MOVE FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29.

{¶ 20} In this assignment of error, Gross argues that defense counsel was ineffective for failing to file a Crim.R. 29 motion for acquittal at the end of the State's case and/or at the end of the defense's own case and that he was prejudiced by the resulting verdict.

{¶ 21} "To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him." *Andrus v. Texas*, __ U.S. __, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335 (2020), citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 41.

{¶ 22} Even if defense counsel had moved for an acquittal under Crim.R. 29, it

would not have changed the outcome. As we have explained,

> "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

*Curtis*, 2020-Ohio-4152, 157 N.E.3d 879, at ¶ 44. "Because we have already concluded that the conviction was not against the manifest weight of the evidence, a motion arguing sufficiency could not possibly have been successful. As a result, trial counsel did not render ineffective assistance of counsel by failing to make such a motion." *Id.* at ¶ 45.

{¶ 23} The second assignment of error is overruled.

### III. Conclusion

{¶ 24} We have overruled both of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Nolan C. Thomas
V. Gayle Miller
Hon. James F. Long