[Cite as *State v. Rosenberger*, 2021-Ohio-3695.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29010 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-2585 |
| | : | |
| RALPH RICHARD ROSENBERGER | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 15th day of October, 2021.

. . . . . . . . . . .

STEPHANIE COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, 335 West Third Street, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

KAREN S. MILLER, Atty. Reg. No. 0071853, P.O. Box 341274, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Ralph Richard Rosenberger appeals from his conviction on one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor.

{¶ 2} Rosenberger's appointed appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of any non-frivolous issues for review and requesting permission to withdraw from representation. Counsel raises one potential assignment of error challenging the credibility of the prosecution's witnesses but concludes that it lacks arguable merit. After independently reviewing the record, we agree with counsel's assessment. Accordingly, the trial court's judgment will be affirmed.

## Facts and Procedural History

{¶ 3} Rosenberger was charged by complaint for allegedly punching Dennis Esken in the face during an altercation. Rosenberger waived speedy-trial time, and the case proceeded to a November 2020 bench trial. The State presented four witnesses. The first was Zachary Boone, a Dayton police officer. Boone arrived on the scene after the incident, which occurred outside of a triplex apartment building on August 14, 2020. Boone spoke to Esken, who reported having been assaulted by Rosenberger. The officer obtained witness statements and observed dried blood on one of Esken's ears as well as blood on his knuckles.

{¶ 4} The second prosecution witness was Stephanie Engle, who lived in one of the three units. She testified that she had known Rosenberger for about 20 years and had been involved with him romantically. She ended the relationship in February 2020 but remained friendly with him until sometime that summer. Since then, she had been trying

to get him to "leave [her] alone." On the day at issue, Rosenberger arrived outside her apartment on his motorcycle and hit her car window with his fist as she was leaving to go to dinner with Esken, who she described as a friend. According to Engle, Rosenberger followed her car until she approached a police officer in a parking lot. Rosenberger left when she made contact with the officer.

{¶ 5} Engle testified that she and Esken returned to her residence after dinner. They sat outside and talked with friends from the same building. While doing so, she saw Rosenberger arrive on a motorcycle and proceed to run toward Esken, who was sitting in a lawn chair. Engle testified that Rosenberger shoved Esken's chair, and the two men tumbled down a small hill. While they were on the ground, Engle saw Rosenberger punch Esken in the ear with a closed fist. The two men regained their footing, and Rosenberger shoved Esken to the ground a second time as Esken was attempting to back away. Engle testified that she then stepped inside her apartment and retrieved a baseball bat; she stated that Rosenberger left when she threatened him with it. According to Engle, Esken did not harm or attempt to assault Rosenberger.

{¶ 6} The third witness was Danielle Pittman. She had been outside with Engle, Esken, and another apartment resident that evening. At some point, she went inside to go to bed. Shortly thereafter, she heard shouting. She went back outside and saw Rosenberger "going after" Esken. Pittman watched Rosenberger "attack" Esken by taking him to the ground and punching him in the ear. According to Pittman, the two men separated briefly before Esken fell and Rosenberger got on top of him again. Rosenberger then removed himself from Esken, got on his motorcycle, and "sped off." Pittman never saw Esken slap, punch, or attempt to harm Rosenberger.

{¶ 7} The final prosecution witness was Esken. He testified that he was sitting with the others when he saw Rosenberger running toward him from the parking lot. Rosenberger "charged" at him as he attempted to rise from the chair. The two men fell to the ground with Rosenberger on top. Esken recalled that Rosenberger punched him in the ear with a closed fist as he was falling. Esken elbowed and kicked at Rosenberger while on the ground to extricate himself. After the two men got to their feet, Rosenberger shoved Esken, causing him to fall again. The incident ended with Rosenberger getting up and leaving on his motorcycle. Esken testified that no one displayed a baseball bat.

{¶ 8} After the prosecution rested, Rosenberger testified on his own behalf and claimed to have acted in self-defense. He testified that he had broken up with Engle around March 2020. According to Rosenberger, they continued to see each other, however, and maintained a sexual relationship as recently as three weeks before trial. Rosenberger testified that on the day in question he learned that Esken was at Engle's apartment. Rosenberger responded by riding his motorcycle over to confront Engle. He was upset because he believed he and Engle were "still together." Rosenberger saw Engle and Esken drive away to go to dinner. He returned to Engle's apartment later that evening to see if Esken was there. He did so because he considered himself still in a relationship with Engle and did not like her "cheating" on him.

{¶ 9} Rosenberger explained that he parked his motorcycle and walked over to Esken. According to Rosenberger, Esken responded by standing up and "dancing" like a boxer while throwing jabs. Rosenberger told Esken to stop. When Esken continued dancing and jabbing, Rosenberger shoved him to the ground. After getting up, Esken charged toward Rosenberger, who responded by "slapping" him with an open hand.

Rosenberger testified that Esken grabbed his legs, causing him to fall. Both men went to the ground, and Rosenberger grabbed Esken's hair and restrained him to prevent being assaulted. Rosenberger eventually released Esken, uttered a profanity to Engle as he walked past her, and left on his motorcycle. Rosenberger denied that Engle threatened him with a baseball bat. He explained that he shoved and restrained Esken because he feared being assaulted. Finally, he testified that he had undergone two hip replacements and could not run.

{¶ 10} On cross-examination, Rosenberger acknowledged that he went to Engle's apartment because he did not trust her and was angry about her involvement with Esken. Rosenberger stated that he was not "scared" of Esken and that he would not "back down from nobody." On redirect examination, Rosenberger clarified that he did believe Esken might hit him and cause physical harm. In that sense, he claimed he was in fear. In response to questioning from the trial court, Rosenberger acknowledged that his intent was to "confront" Esken about Engle.

{¶ 11} Based on the evidence presented, the trial court rejected Rosenberger's self-defense claim and found him guilty of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" The trial court deemed self-defense inapplicable because Rosenberger created the situation and lacked reasonable grounds to believe he would be harmed. Assuming, arguendo, that Rosenberger's testimony did support a self-defense claim, the trial court also found that the prosecution had disproven it beyond a reasonable doubt.

{¶ 12} Following a presentence investigation, the trial court imposed and suspended a 180-day jail sentence. It then imposed a community-control sanction that

included 18 months of basic probation supervision. This appeal followed. Upon receiving counsel's *Anders* brief, we notified Rosenberger and granted him 60 days to file a pro se brief. Rosenberger did not file a brief, and the matter is now before us for independent review.

### *Anders* Standard

{¶ 13} When counsel files an *Anders* brief, an appellate court must determine, "after a full examination of the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous simply because the State has a strong responsive argument. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. A frivolous issue is one about which "on the facts and law involved, no responsible contention can be made that offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. If we find any issue that is not wholly frivolous, we must reject the *Anders* brief and appoint new counsel to represent Rosenberger.

### *Anders* Review

#### A. Witness Credibility

{¶ 14} Appointed counsel's *Anders* brief challenges the credibility of the prosecution's witnesses. Counsel argues that Engle was not credible because she claimed to have brandished a baseball bat whereas Esken contradicted her and said no one had a bat. Counsel also notes that Esken and Engle both claimed Rosenberger ran or charged toward Esken while Rosenberger claimed he cannot run due to hip replacements. Finally, counsel contends Engle lacked credibility because she testified

that she did not hear Rosenberger's motorcycle whereas Rosenberger testified that his motorcycle is loud. Based on these contradictions, appointed counsel maintains that the prosecution failed to meet its burden of proof.

{¶ 15} Counsel's argument about witness credibility raises an issue regarding the manifest weight of the evidence to sustain Rosenberger's conviction. Counsel in effect argues that Rosenberger's conviction was against the weight of the evidence because the prosecution's witnesses were not believable.

{¶ 16} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Typically, in manifest weight review, we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination." *State v. Curtis*, 2020-Ohio-4152, 157 N.E.3d 879, ¶ 20 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 17} With the foregoing standards in mind, we see no non-frivolous issue

regarding witness credibility and the weight of the evidence. The prosecution witnesses testified consistently with regard to key facts underlying the assault charge. They each testified about Rosenberger rushing Esken, knocking him to the ground, and punching him in the ear. The fact that the prosecution witnesses' testimony conflicted with Rosenberger's own testimony does not establish that the prosecution witnesses lacked credibility. Moreover, relatively minor disputes—such as whether Engle should have heard Rosenberger's motorcycle or whether Rosenberger walked or ran toward Esken— do not make the assault conviction contrary to the weight of the evidence. The lone example Rosenberger cites where prosecution witnesses potentially contradicted each other involved the baseball bat. Engle claimed to have brandished a bat to scare Rosenberger away. Esken testified that no one had a bat. We note, however, that Esken had just been tackled and punched in the ear when Engle purportedly brandished the bat. Under these circumstances, Esken simply may not have noticed Engle with the bat. In any event, the baseball bat's presence or absence after the punch was not central to Rosenberger's conviction.

{¶ 18} In finding Rosenberger guilty, the trial court evaluated the evidence, assessed witness credibility, and found credible the prosecution witnesses' testimony that Rosenberger initiated an altercation and punched Esken in the ear. We see no non-frivolous issue with regard to the trial court's resolution of the issue or whether the weight of the evidence supported Rosenberger's conviction.

## B. Independent Review

{¶ 19} We independently have examined the entire record and have not found any non-frivolous issues for review. The evidence supports Rosenberger's conviction, and we

see no potential sentencing errors. After reviewing a presentence investigation report, the trial court allowed Rosenberger and his attorney to speak at sentencing. The trial court then imposed and suspended a jail sentence within the range authorized by R.C. 2929.24(A)(1) for a first-degree misdemeanor. It also suspended Rosenberger's fine and waived costs due to indigence.

{¶ 20} We note too that R.C. 2929.25 and R.C. 2929.27(A)(6) authorized the trial court impose and suspend the jail sentence and impose a community-control sanction that included a term of basic probation supervision. Because the trial court imposed and suspended a jail sentence before imposing community control, it had no obligation to inform Rosenberger at sentencing of the potential consequences of a future violation.

{¶ 21} Under R.C. 2929.25(A)(3), a trial court must notify a misdemeanor defendant of the consequences of a community-control violation if it "directly imposes a community control sanction or combination of community control sanctions pursuant to division (A)(1)(a) or (B) of this section." Here the trial court did not "directly" impose community control under R.C. 2929.25(A)(1)(a) or R.C. 2929.25(B). It imposed and suspended a jail sentence and then imposed community control under R.C. 2929.25(A)(1)(b). As a result, the trial court was not obligated to inform Rosenberger at sentencing of the potential consequences of violating community control. *See State v. Fankle*, 2015-Ohio-1581, 31 N.E.3d 1290, ¶ 10 (2d Dist.) (observing that "[i]f a trial court elects to sentence [a misdemeanor] offender directly to community control, it must notify the offender of certain things"); *State v. Snell*, 2d Dist. Clark No. 2018-CA-99, 2019-Ohio-2251, ¶ 9 ("There is an explicit requirement in R.C. 2929.25(A)(3) for the sentencing court to state the duration of the community control sanctions imposed. However, that

requirement only applies when the trial court directly imposes community control sanctions, not where, as here, the trial court imposed a suspended jail sentence with community control sanctions."); *State v. Drake*, 2d Dist. Montgomery No. 21939, 2007-Ohio-6586, ¶ 22 ("By its own terms, R.C. 2929.25(A)(3) does not apply to situations where the court has chosen to impose a definite jail term under R.C. 2929.25(A)(1)(b). This is logical, because if the court has already chosen the alternative in R.C. 2929.25(A)(1)(b) of imposing a definite term and suspending all or part of the term, the court would not need to impose a definite term if the offender violates the community control sanctions– a definite term has already been imposed. As a sanction for the violation, the court could simply require the offender to serve all or part of the definite term that had been suspended.")

{¶ 22} Finally, we see no non-frivolous issue regarding self-defense. For self-defense to apply, there must be evidence that Rosenberger was not at fault in creating the situation, that he had a bona fide belief he was in imminent danger of bodily harm, and that he did not violate any duty to retreat or avoid the danger. (Citations omitted.) *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 20. Here, Rosenberger effectively admitted creating the situation by going to the scene while angry to confront Esken about his relationship with Engle. As the trier of fact, the trial court also explicitly rejected Rosenberger's claim about fearing bodily harm. We note too that Rosenberger could have avoided any danger by leaving when Esken purportedly started "dancing" and jabbing the air. But even if the evidence did support a self-defense theory, the trial court held that the prosecution had disproven it beyond a reasonable doubt. It is apparent that the trial court credited the prosecution witnesses' testimony in reaching this

conclusion, and we see no non-frivolous argument to the contrary.

## Conclusion

{¶ 23} Having reviewed the entire record and found no non-frivolous issues for appeal, we sustain appointed counsel's motion to withdraw and affirm the trial court's judgment.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Stephanie Cook
Andrew D. Sexton
Karen S. Miller
Ralph Richard Rosenberger
Hon. Deirdre E. Logan