[Cite as *State v. Miller*, 2025-Ohio-197.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30151 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 02494/2 |
| | : | |
| MARK ANTHONY MILLER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 24, 2025

. . . . . . . . . . .

MICHAEL MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Mark Anthony Miller appeals from his conviction for felonious assault.   For the reasons set forth below, we affirm.

**I.      Factual and Procedural Background**

{¶ 2} On June 2, 2023, Cheyenne Garber was at the home of the victim L.E., along with L.E.'s wife and several other friends. Garber left the house to purchase a drink at a nearby gas station but then realized she had left her debit card at L.E.'s house. She texted L.E. and asked him to bring the card to the gas station.

{¶ 3} When L.E. arrived at the gas station, he and Garber retrieved drinks and went to the register to pay. At that point, Garber noticed a man with dreadlocks, later identified as Kenneth Moreland, who was on his cell phone. At the register, L.E. offered to pay for the drinks, but Garber stated that she would pay. L.E. handed her a couple of dollars for his drink. Moreland then addressed L.E. and Garber, stating that they should give him the money. Garber replied, "Bitch, I don't know you."

{¶ 4} When Garber and L.E. left the gas station, Moreland followed them out and began yelling at L.E. to "control his woman." As Moreland continued to yell at them, another man, subsequently identified as Miller, walked up to the trio. Moreland punched L.E. in the face. L.E. was immediately rendered unconscious, fell to the ground, and landed on his back. Miller yelled, "represent," and then bent down and punched L.E. in the face. Garber retreated to her vehicle. Moreland followed and attempted to get into Garber's vehicle, but she had locked the doors. Garber called 911.

{¶ 5} When the police arrived, Garber informed them about Moreland, but she did not mention Miller. L.E. was transported to a local emergency room. He had sustained fractures to the base of his skull and had bleeding and swelling of the brain. L.E. underwent a surgical procedure to relieve hemorrhagic swelling in his left eye. Once he was stabilized, L.E. was transferred to the intensive care unit. L.E. spent five days in the

hospital.

{¶ 6} Following an investigation, Miller was arrested. On November 3, 2023, he was indicted on one count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1). A jury trial was conducted in April 2024. At trial, in addition to testimonial evidence setting forth the above facts, the State presented video surveillance footage from the gas station. The video showed a white vehicle drive up to and park by the entrance to the gas station. Moreland exited from the driver's door and entered the gas station. Miller then exited from the passenger side of the same vehicle and also entered the gas station. L.E. and Garber were already in the station, and Miller stared at them as they walked by him. Miller then exited the store and stood by Moreland's vehicle. Thereafter, an SUV stopped by the gasoline pumps, and someone walked from the SUV into the station. Miller then walked behind the SUV and stared at it until Moreland exited the station. As Moreland exited, Miller walked toward Garber and L.E. Miller followed a few steps behind Moreland. On the video, Miller can be observed bending down, and his arm then moved upward then downward. Miller and Moreland then left the scene together in the same vehicle.

{¶ 7} At the conclusion of the trial, the jury convicted Miller as charged. The trial court sentenced Miller to an indefinite term of three to four and one-half years in prison.

{¶ 8} Miller appeals.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 9} The first assignment of error asserted by Miller states:

THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION FOR R.C. 2903.11(A)(1) AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 10}** Miller claims the State failed to present sufficient evidence to sustain the conviction for felonious assault and that the conviction was against the manifest weight of the evidence.

**{¶ 11}** "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). It is essentially a test of adequacy; whether the evidence is legally sufficient to support a verdict is a question of law. *Id.*

**{¶ 12}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

**{¶ 13}** However, when an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the

evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 14} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). As a result, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra,* 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶ 15} Miller first contests his conviction on the basis that the State was unable to specifically attribute any of L.E.'s injuries to his actions. Thus, he claims the State failed to present evidence sufficient to prove that he, rather than Moreland, caused serious physical harm to L.E.

{¶ 16} Miller was indicted for, and convicted of, felonious assault as proscribed in R.C. 2903.11(A)(1), which provides, "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . .[.]"[1] "A person acts knowingly, regardless of purpose, when

---

[1] There is no dispute that L.E. suffered serious physical harm as defined by R.C. 2901.01(5).

the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶ 17}** Although the indictment is framed to indicate that Miller was a principal offender, the State argued complicity to commit the offense of felonious assault, and the jury was instructed as such.[2] Ohio's complicity statute, R.C. 2923.03, states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). Anyone who aids or abets another in committing an offense "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F). A person aids and abets the commission of a crime when he supports, assists, encourages, cooperates, advises or incites the principal offender in the commission of the offense, and shares the criminal intent of the principal offender. *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Ohio courts have recognized that '[e]vidence of aiding and abetting another in the commission of crime may be demonstrated by both direct and circumstantial evidence.' " *State v. Wade*, 2007-Ohio-6611, ¶ 20 (2d Dist.), quoting *State v. Cartellone*, 3 Ohio App.3d 145, 150 (8th Dist.1981). "Thus, ' "participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed." ' " *Id.*, quoting *Cartellone*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971).

---

[2] We note that the State was not required to explicitly allege complicity in the indictment. *See State v. McFarland*, 2020-Ohio-3343, ¶ 28.

{¶ 18} The evidence established that Miller and Moreland arrived together at the gas station. The video footage showed Miller staring at the victim inside the gas station and then following a few steps behind Moreland to approach L.E. After Moreland punched L.E., Miller yelled "represent," then leaned down and punched L.E. in the face. In fact, Miller remained over the victim while Moreland walked over to Garber's vehicle. Thereafter, the pair walked off together and left the scene in the same car. Garber testified that, after being punched by Moreland, L.E. fell to the ground where he lay unmoving with his arms splayed out; he remained unmoving while Miller bent down and punched him in the face.

{¶ 19} Garber testified that L.E. was clearly unconscious when he hit the ground after Moreland's blow to his face and that he remained so when Miller hit him. Thus, a reasonable mind could have inferred that Miller was aware that Moreland had caused serious physical harm to L.E. Also, there was no evidence that Miller had an independent reason to assault L.E. Thus, it was reasonable to infer that Miller had participated in the assault solely to assist Moreland. Taken as a whole, this evidence permitted a rational fact finder to conclude that Miller had knowingly aided and abetted the principal offense of felonious assault.

{¶ 20} Miller next claims that Garber's testimony was not credible. Specifically, he notes that she did not inform the police about a second assailant until approximately one week after the event.

{¶ 21} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact primarily to resolve. *State v. DeHass*, 10 Ohio St.2d 230

(1967). "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). Thus, an appellate court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997).

{¶ 22} The jury heard Garber's testimony and was aware that she did not initially inform the police about the existence of a second assailant. The jury also heard her explanation for that initial omission. Specifically, Garber testified that the police arrived on the scene after the emergency medical technicians (EMTs) began tending to L.E., at which point her attention was focused on her friend. According to Garber, the police asked her who had "knocked [L.E.] out". While simultaneously watching the EMTs and L.E., Garber responded to their question by providing a description of Moreland. Garber testified that she had been in "shock" and "frightened" and had been realizing that her friend was "much more" seriously injured than she initially thought. Garber testified that the police contacted her again a week later, at which time she was calm, and she was then able to give more detail about the crime, including information about Miller.

{¶ 23} We cannot conclude that Garber's testimony was patently incredible.

Further, the video clearly demonstrated that a second man was with Moreland, and that the man's actions on camera corroborated Garber's testimony. Therefore, the jury did not lose its way in deciding to give credence to Garber's testimony.

{¶ 24} Based upon the record before us, we conclude that the State presented sufficient evidence to prove that Miller aided and abetted Moreland in the offense of felonious assault. We further conclude that the conviction was not against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

### III.    Ineffective Assistance of Counsel

{¶ 25} Miller's second assignment of error is:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶ 26} Miller contends that his trial counsel was ineffective because he failed to cross-examine the State's expert witness.

{¶ 27} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). Under these cases, to prevail on an ineffective assistance claim, Miller must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient

performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 28} To establish deficient performance, Miller must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson*, 2005-Ohio-6143, ¶ 29 (2d Dist.), citing *Strickland*.

{¶ 29} To establish prejudice, Miller must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 30} In reviewing ineffective assistance claims, we will not second-guess trial strategy decisions. *State v. Mason*, 82 Ohio St.3d 144, 157 (1998); *Strickland* at 689. Therefore, " 'trial counsel is allowed wide latitude in formulating trial strategy.' " *State v. Collins*, 2011-Ohio-4475, ¶ 15, quoting *State v. Olsen*, 2011-Ohio-3420, ¶ 121 (2d Dist.). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.), citing *State v. Cook*, 65

Ohio St.3d 516, 524-525 (1992).

{¶ 31} At trial, the State presented the testimony of Dr. Ekeh, who attended L.E. in the emergency room. Ekeh described the nature and extent of the injuries L.E. had sustained. Ekeh did not attribute any of the injuries to a specific assailant, nor was he asked to do so. Defense counsel did not conduct a cross-examination.

{¶ 32} Generally, "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 2004-Ohio-6235, ¶ 146. Moreover, "an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination." *In re Brooks*, 2004-Ohio-3887, ¶ 40 (10th Dist.).

{¶ 33} Miller complains that trial counsel failed to conduct cross-examination to establish that Ekeh did not witness the assault and did not know whether Moreland or Miller had caused L.E.'s injuries.

{¶ 34} Ekeh's own testimony demonstrated that he did not witness the offense. Specifically, he testified that his first encounter with L.E. occurred at the hospital. Given this, we discern no basis for cross-examination on this issue.

{¶ 35} Further, it was clear at trial that the State was not able to attribute a specific injury to Miller's actions. As such, this issue did not require cross-examination. Moreover, defense counsel could have reasonably decided not to further question Dr. Ekeh in order to avoid additional discussion of the severity of L.E.'s injuries.

{¶ 36} We cannot conclude that trial counsel's decision not to conduct any cross-

examination of Dr. Ekeh was unreasonable or constituted deficient performance, and Miller has failed to demonstrate prejudice flowing therefrom, as the jury was aware that Ekeh did not witness the assault and that the State could not determine which assault caused which injuries. Accordingly, the second assignment of error is overruled.

## IV. Conclusion

**{¶ 37}** Both of Miller's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.