[Cite as *State v. Bankston*, 2025-Ohio-5543.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30384 |
| Appellee | : | |
| | : | Trial Court Case No. 24 CRB 3303 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| MILTON E. BANKSTON | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 12, 2025, the judgment of the trial court is reversed in part and remanded solely for clarification regarding sentencing. The trial court's judgment is affirmed in all other respects.

Costs to be paid as follows: 50% by appellee and 50% by appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

TUCKER, J., and LEWIS, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30384

ANTHONY D. MAIORANO, Attorney for Appellant
MARIE POINSATTE, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Defendant-Appellant Milton Bankston appeals his convictions of criminal trespass and obstructing official business and raises four assignments of error. He contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. He argues that objectionable statements given during the testimony of two of the State's witnesses denied him a fair trial. He submits that he was denied effective assistance of counsel at his trial. Finally, he asserts that the trial court erred in failing to specify whether the sentences for his convictions were to run concurrently or consecutively.

{¶ 2} For the reasons outlined below, the trial court erred in failing to specify that Bankston's sentences were to run concurrently. This matter is reversed in part and remanded solely for clarification of Bankston's sentences. In all other respects, the judgment of the trial court is affirmed.

## I. Factual Background and Procedural History

{¶ 3} Bankston was trespassed from Summit Square Apartments in December 2023 by Cheryl Siegmann. On October 7, 2024, the police were notified that he was on the property again despite the prior trespass. On October 8, 2024, he was charged with one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree, and one count of criminal trespass in violation of R.C. 2911.21(A)(3), a misdemeanor of the fourth degree. The matter proceeded to a jury trial.

2

**{¶ 4}** At trial, Siegmann, who by then was a former property manager of Summit Square, testified that Bankston had been trespassed from the apartment complex in December 2023. At that time, Bankston had been given a piece of paper notifying him that he was not permitted on the property. Officer Greer Hoefgen of the Dayton Police Department testified that she had created a field interview card on December 7, 2023, denoting Bankston's verbal trespass warning that he was not allowed on the property and would be arrested for criminal trespass if he were caught there again.

**{¶ 5}** Penny Magos, who managed Summit Square Apartments in October 2024, also testified. On October 7, 2024, when Magos arrived at work, she was contacted by the police and learned that Bankston had allegedly broken a property window. According to Magos, Bankston was not a tenant, nor did he have any other privilege to be on the property, and his previous trespass was still active. Magos decided at that time to continue Bankston's no-trespass order. The police instructed Magos to phone the prosecutor's office to file a criminal complaint against Bankston for criminal trespass. Officers Ronnie Taylor and Dylan Lehotay of the Dayton Police Department were dispatched to the apartment complex following Magos's complaint of Bankston's criminal trespass.

**{¶ 6}** Taylor testified that, on October 7, 2024, he was dispatched to the apartment complex following a call from a woman who wanted Bankston removed from the property. Upon putting Bankston's personal information into LEADS, a computerized law enforcement database, Taylor and Lehotay learned that Bankston had been previously trespassed from Summit Square Apartments. Taylor, along with Lehotay, parked near a specified apartment and observed Bankston briefly poking his head out of the front door and disappearing back into the residence. Shortly thereafter, Bankston exited the back door of the apartment and ran.

{¶ 7} Upon seeing Bankston running, Lehotay, who also testified at trial, made eye contact with Bankston and yelled at him from approximately twenty-five yards away to stop. Bankston did not stop, and a light foot chase ensued. The officers lost sight of Bankston, and he eventually reentered an apartment.

{¶ 8} After receiving a tip that Bankston was in apartment 727, the officers obtained consent from the resident to search the apartment and found Bankston inside. According to both officers, Bankston never stopped running, and they were "one hundred percent" confident that the person whom they arrested inside apartment 727 was the same person who had run away from them.

{¶ 9} The officers arrested Bankston for criminal trespass because he had returned to the property following a previous trespass and for obstructing official business because he had fled when the officers tried to confront him. Bankston was transported to jail, and Magos was contacted to confirm that she wanted to pursue the criminal trespass charge, which she confirmed. Bankston maintained that he had never been trespassed from the property.

{¶ 10} At the conclusion of the State's case at trial, the defense moved under Crim.R. 29 for acquittal on the criminal trespass and obstructing official business charges. Bankston argued that the State had not proved the criminal trespass charge because it had not established that Bankston was aware of a prior trespass, which was necessary to prove the charge. The State maintained that Bankston had been trespassed and was aware of that fact, as evidenced by Siegmann's testimony and his own attempt to flee the scene upon being spotted by the police. As for the requested dismissal of Bankston's obstructing official business charge, he asserted that the officers had failed to issue a warning or ask him by name to stop, and thus his actions had not prevented or delayed the performance of an

4

official duty. The State responded that the officers were in uniform and in a marked cruiser performing their official duties at the apartment complex that day. The State highlighted that Lehotay had commanded Bankston to stop within twenty-five yards of where he was running. Based on these arguments, the trial court overruled Bankston's Rule 29 motion.

{¶ 11} Defense counsel called no witnesses and rested Bankston's case. The jury found Bankston guilty of both charges. On the obstructing official business charge, the trial court sentenced him to ninety days in jail, suspended eighty-nine days, and gave him credit for one day previously served. As to the criminal trespass charge, the court sentenced him to thirty days in jail, suspended twenty-six days, gave him credit for one day previously served, and ordered him to serve three days in jail.

{¶ 12} Bankston appealed his convictions.

## II.     Assignments of Error

### A.     First Assignment of Error

{¶ 13} In his first assignment of error, Bankston asserts that his convictions for criminal trespass and obstructing official business were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*; *State v. Troche*, 2023-Ohio-565, ¶ 18 (3d Dist.).

{¶ 15} "'Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.'" *State v. Curtis,* 2020-Ohio-4152, ¶ 44 (2d Dist.), quoting *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). Accordingly, "'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" *Id.,* quoting *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 16} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.). "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *see also Curtis* at ¶ 19.

{¶ 17} The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. Griffith*, 2015-Ohio-4112, ¶ 28 (2d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest

6

weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997).

*Criminal Trespass*

{¶ 18} Bankston was found guilty of criminal trespass under R.C. 2911.21(A)(3), which states that "[n]o person, without privilege to do so, shall . . . [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access."

{¶ 19} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 20} Ohio law requires that a person be given notice against unauthorized access or presence on land or premises by "actual communication." R.C. 2911.21(A)(3). There is no requirement that the communication be in writing. *See id*. An oral advisement to a defendant that he has been banned from certain property is sufficient to put the defendant

7

on notice that he has been trespassed. *See State v. Johnson*, 2002-Ohio-6471, ¶ 7 (11th Dist.) (finding oral advisement sufficient to put the defendant on notice of trespass where officer testified that he had advised the defendant that he was banned from the property); *see also State v. Sigurani*, 2025-Ohio-1573, ¶ 41 (2d Dist.).

{¶ 21} "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). "For purposes of criminal trespass, privilege 'includes permission to enter the premises given by a resident of the premises.'" *State v. Smith*, 2012-Ohio-4861, ¶ 12 (2d Dist.), quoting *State v. Clelland,* 83 Ohio App.3d 474, 490 (4th Dist. 1992), *abrogated by State v. Randolph*, 2023-Ohio-4753, ¶ 12.

{¶ 22} "Ohio law provides that a landlord cedes his or her possessory interests in leased property to the tenant and therefore may not prohibit the tenant from inviting guests onto the property." *Randolph* at ¶ 18, citing *State v. Hermann*, 1996 WL 210782, *1-2, (11th Dist. Mar. 8, 1996). Unless a landlord first reserves the authority to prohibit a tenant from inviting guests onto the property by language in the lease agreement that preserves the landlord's possessory interests in the property, the landlord may not prohibit a person whom the landlord had sought to ban from the premises from entering the property and so prevent a tenant of the property from inviting that person onto the property. *Id*. at ¶ 21.

{¶ 23} With respect to the criminal trespass charge, Bankston argues that he was found by police inside apartment 727 and thus the resident of that unit obviously had allowed him to be an invited guest, thereby superseding the landlord's possessory interests in the property and precluding the landlord from banning him from the property. He was upstairs in the apartment, alone without the resident of the apartment, and came out willingly after the police knocked on the door. He contends that he was privileged to be at the apartment

8

complex and that the only evidence he lacked privilege came from conclusory statements made by property managers and police officers stating that there was no reason to believe he had privilege to be there. He submits that there was no evidence that he lacked privilege, yet there was ample evidence that he had privilege to be on the property, as indicated by his presence inside apartment 727. Accordingly, Bankston contends that there was insufficient evidence of criminal trespass, and the trial court erred in sending the trespass charge to the jury.

{¶ 24} As for Bankston's manifest weight argument, he argues that the State failed to show that he had acted recklessly in failing to leave the premises, assuming he lacked privilege to be on the property to begin with. He asserts that any verbal warning that he had been trespassed from the property was a specious basis for reckless conduct.

{¶ 25} The crux of Bankston's argument is that he was privileged to be on the property as an invited guest. However, while a landlord cedes possessory interests in the leased property to a tenant—who may invite a person onto the property even if the landlord had sought to ban the person from the premises—no testimony or other evidence was presented that any tenant of Summit Square Apartments, including the tenant of apartment 727, had invited Bankston onto the premises. Even if Bankston had been an invited guest of apartment 727, there was no evidence of that in the record, and his mere presence on the property did not mean that he was privileged to be there. The apartment manager specifically testified that he did not have any privilege to be on the premises and that his prior trespass was still active. Nothing in the record indicates that Bankston asserted to police that he was privileged to be there. Rather, after receiving the tip that Bankston was in apartment 727, the officers obtained consent from a resident to search that apartment and found Bankston. It is entirely possible that Bankston ran into that apartment without permission simply to get

9

away from the police. The State met its burden to demonstrate that Bankston did not have privilege to be on the property. The record contains no evidence to the contrary.

{¶ 26} Additionally, even if Bankston now claims he was unaware that he had been trespassed and there was no written evidence of the same, there was testimonial evidence from Siegmann that he had been trespassed from the apartment complex in December 2023 and that had even been given written notification that he was not permitted on the property. Officer Hoefgen also testified that she created a field interview card on December 7, 2023, denoting Bankston's verbal trespass warning, and the record contains no evidence to the contrary.

{¶ 27} We observe that although this court considers the credibility of witnesses in reviewing the record, we accord due deference to the trier of fact. The credibility and the weight to be given to the testimony of each witness were matters for the jury to resolve, and we will not substitute our judgment for the jury's on the issue of witness credibility. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility. We find that the jury, viewing the record as whole, could have found that the testimonial evidence from each of the States' witnesses was credible. As for any contrary evidence the jury could have considered, Bankston did not testify on his own behalf, nor did he subpoena or call any witnesses.

{¶ 28} The record does not support a conclusion that the jury lost its way at arriving at its verdict and created such a manifest miscarriage of justice that Bankston's conviction must be reversed and a new trial ordered. After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find that Bankston's conviction for criminal trespass was not against the manifest weight of the evidence.

10

**{¶ 29}** Our determination that Bankston's conviction was not against the manifest weight of the evidence is dispositive of the issue of sufficiency. Nonetheless, we note that the evidence presented, when viewed in a light most favorable to the State, was sufficient to demonstrate that Bankston recklessly entered or remained at Summit Square Apartments without privilege to do so after he had been given verbal notice that he was trespassed and not authorized to be there. This was enough to persuade a reasonable trier of fact that the elements of criminal trespass had been proven beyond a reasonable doubt.

*Obstructing Official Business*

**{¶ 30}** Bankston was also found guilty of obstructing official business in violation of R.C. 2921.31(A), which states:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

"'R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege.'" *State v. Morrow*, 2023-Ohio-2891, ¶ 12 (2d Dist.), quoting *State v. Kates,* 2006-Ohio-6779, ¶ 21 (10th Dist.). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

11

**{¶ 31}** "An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *State v. Harris*, 2015-Ohio-5378, ¶ 7 (9th Dist.), citing *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 84 (9th Dist.1996). "In order to commit obstructing official business, an individual must commit 'an overt act done with an intent to obstruct the officers' and the act must succeed in actually hampering or impeding the officers." *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.), quoting *State v. Crawford*, 2013-Ohio-4398, ¶ 20 (2d Dist.). While a mere failure to obey a law enforcement officer's request may not amount to obstruction, the "affirmative act of running from an officer" does impede an officer's lawful duty. *State v. Sanders*, 2007-Ohio-2898, ¶ 21 (9th Dist.), citing *State v. Brickner-Latham*, 2006-Ohio-609, ¶ 2 (3rd Dist.). For example, in *State v. Faulkner*, 2023-Ohio-2505, ¶ 17 (2d Dist.), we held that the defendant obstructed official business when he did not stop at an officer's request, hurriedly entered his apartment, closed and locked his door, and refused to open it.

**{¶ 32}** Here Bankston contends that running in the face of Officer Lehotay's single command to stop does not show that he acted with purpose to prevent, obstruct, or delay the police. He further argues that the officers had not affirmatively identified him but were merely given a tip, which was questionable, as to his identity and location.

**{¶ 33}** The evidence presented at trial showed that Lehotay ordered Bankston to stop, but instead he ran away from the officers, forcing them to search for him. Even though Bankston claims that there was no evidence that he heard Lehotay's command, the State was not required to prove that Bankston *heard* the order to stop—as opposing to seeing the officers—and there is no evidence in the record to the contrary. Although Lehotay ordered Bankston to stop only once, Lehotay also made eye contact with him before he ran away. Both officers were "one hundred percent" confident that the person they arrested inside

12

apartment 727 was Bankston—the same person who had just run away from them. The jury had the opportunity to view the witnesses' testimony and adjudge their credibility.

{¶ 34} Given the testimony presented at trial, we conclude that the State presented sufficient evidence of obstructing official business. Bankston did not stop at Officer Lehotay's command, despite making eye contact with him. Bankston ran, caused a brief foot chase, and entered apartment 727. He acted, without privilege, to prevent the officers from confronting him about the trespass complaint and did, in fact, impede the officers from performing their official duties. Based on the evidence presented, we conclude that any rational factfinder viewing the evidence in a light most favorable to the State could have found the essential elements of obstructing official business were proven beyond a reasonable doubt.

{¶ 35} Additionally, we cannot conclude that the jury's verdict was unsupported by the evidence or that the jury clearly lost its way and created a manifest injustice. The jury credited the testimony of the State's witnesses on the obstructing official business charge, and we defer to the jury's assessment of credibility. The record reflects that Bankston acted with purpose to prevent, obstruct, or delay the officers in the performance of their lawful duties, which were to investigate the trespass complaint and to remove Bankston from the apartment complex for trespass.

{¶ 36} Bankston's first assignment of error is overruled.

B.    *Second Assignment of Error*

{¶ 37} In his second assignment of error, Bankston claims that he was denied a fair trial when the trial court gave inadequate curative instructions after prejudicial character evidence about him was introduced three separate times during trial.

13

{¶ 38} A new trial may be granted on motion of a defendant when the misconduct of witnesses for the state materially affects the defendant's substantial rights. Crim.R. 33(A)(2). The decision whether to grant or deny a mistrial lies within the sound discretion of the trial court and should be granted only when the ends of justice so require and a fair trial is no longer possible. *State v. Garner*, 74 Ohio St.3d 49, 59 (1995), citing *State v. Glover*, 35 Ohio St.3d 18 (1988); *State v. Franklin*, 62 Ohio St.3d 118 (1991); *State v. Widner*, 68 Ohio St.2d 188, 190 (1981).

{¶ 39} A jury is presumed to follow the curative instructions given by a trial judge. *Garner* at 59. A jury instruction to disregard objectionable material may not be sufficient to cure an error if the material "went to the ultimate issue of the case and was revealed to the jury in a concise and detailed manner." *State v. Green*, 1999 WL 173965, *7 (10th Dist. Mar. 18, 1999). However, a fleeting comment that was promptly cured by a curative instruction does not warrant a mistrial even if it referenced the defendant's prior actions (e.g., arrests). *See Garner* at 59.

{¶ 40} During trial, Siegmann testified, "We had previously trespassed him [Bankston] with Dayton police as well, before for an animal cruelty issue with him." Defense counsel objected and moved to strike Siegmann's statement. The trial court sustained, in part, Bankston's objection, finding that the *reason* for the previous trespass (e.g., the animal cruelty issue) was not relevant and ordered it stricken. Siegmann also testified, "He was just agitated and argued that he wasn't trespassed nothing real crazy that we weren't encountering before. He was just argumentative about it and we had to (unintelligible) and it took some time for him to leave. To be honest I don't think he left he just went back to an apartment that he had." Defense counsel objected to this statement as speculative; the court

14

agreed and sustained the objection, again striking Siegmann's response with respect to what she thought Bankston had done at that time.

{¶ 41} Magos testified that "[i]t was brought to my attention when I arrived on property to begin my day at work that he [Bankston] had busted a window, a patio door window." Defense counsel objected to Magos's statement as hearsay, and the trial court sustained the objection.

{¶ 42} The trial court provided the jury with the following instructions regarding the objections and stricken statements:

Statements or answers that were stricken by the court or which you were instructed to disregard are not evidence and must be treated as though you never heard them. You must not speculate as to why the court sustained an objection to any question or what the answer to such question might have been. You must not draw any inferences or speculate on the truth of any suggestion included in a question that was not answered.

{¶ 43} Bankston contends that the witness statements were prejudicial and that his trial was fundamentally unfair when the state's witnesses introduced prejudicial character evidence regarding three instances of his prior actions, which were wholly unrelated to the charges in this case. He complains that the trial court failed to strike the testimony related to his alleged breaking of a patio door window. He argues that this error was not harmless because he had viable defenses and because this case was not one demonstrating overwhelming guilt.

{¶ 44} Upon our review, we conclude that all of Bankston's objections to objectionable statements were sustained by the trial court, and Siegmann's statements were stricken. Defense counsel objected to Magos's statement based on hearsay, which the court

15

also sustained. The trial court instructed that any stricken statements were not evidence and were required to be treated as never heard. The court further instructed that the jury must not speculate as to why the court sustained an objection to any question. Even if Magos's statement regarding the broken window had not been stricken, defense counsel's objection was sustained, and the trial court's instruction was sufficient to make clear that the jury should not consider Magos's statement. Further, even if the jury considered Magos's statement because it had not been stricken, the error was harmless. None of the three objectionable statements went to the ultimate issues of the case or communicated in a concise and detailed manner unfairly prejudicial information to the jury. Siegmann and Magos were not trained officers experienced in testifying, and their statements were fleeting, subject to sustained objections, and cured by instructions. Under these circumstances, we cannot say that the trial court erred in failing to order a mistrial.

{¶ 45} Bankston's second assignment of error is overruled.

C.    *Third Assignment of Error*

{¶ 46} In his third assignment of error, Bankston contends that he was denied his right to counsel in the trial court that is guaranteed under the Fourteenth and Sixth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

{¶ 47} We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). "Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." *State v. Leonard*, 2017-Ohio-8421, ¶ 10 (2d Dist.), citing *Strickland* at 688. "To establish ineffective assistance of counsel,

a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different." *Id.* at ¶ 11.

{¶ 48} *Strickland* charges us to "appl[y] a heavy measure of deference to counsel's judgments" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Sneed*, 2002-Ohio-4768, ¶ 7, citing *Strickland* at 689 and 691. When reviewing ineffective assistance claims, we will not second-guess trial strategy decisions. *State v. Miller*, 2025-Ohio-197, ¶ 30 (2d Dist.), citing *State v. Mason*, 82 Ohio St.3d 144, 157(1998); *Strickland* at 689. "'Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available.'" *Miller* at ¶ 30, quoting *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.).

{¶ 49} During closing argument, defense counsel argued not only that Bankston had family and friends who lived at Summit Square Apartments but also that he had not known that he had been trespassed from the property and thus had not run from the police. Counsel further asserted that Bankston was in a friend's apartment when he was arrested.

{¶ 50} Bankston, however, complains that defense counsel never argued that he had privilege to be on the property through his family and friends and that counsel never called his family or friends as witnesses, including the resident of apartment 727 where he was arrested. Any failure of counsel to subpoena certain family and friend witnesses to testify on Bankston's behalf fell within the purview of trial strategy and cannot form the basis of an ineffective assistance claim. *E.g.*, *State v. Barron*, 2024-Ohio-5836, ¶ 72 (2d Dist.) (citing cases). Moreover, there is no evidence in the record to suggest what such witnesses may

17

have testified to. "'Such speculation is insufficient to establish ineffective assistance.'" *State v. Snowden*, 2019-Ohio-3006, ¶ 101 (2d Dist.), quoting *State v. Short*, 2011-Ohio-3641, ¶ 119.

{¶ 51} Bankston also contends that defense counsel could have obtained information from Magos about other residents, including Bankston's family and friends (who leased apartments at Summit Square) for privilege purposes. He further argues that counsel was ineffective by failing to challenge the State's witnesses about their conclusory statements regarding a tenant's rights to invite guests to the property. However, "'[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" (Bracketed text in original.) *Miller*, 2025-Ohio-197, at ¶ 32 (2d Dist.), quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146. Thus, "'an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.'" *Id.*, quoting *In re Brooks*, 2004-Ohio-3887, ¶ 40 (10th Dist.).

{¶ 52} Bankston also argues that defense counsel was ineffective by failing to request a mistrial following the prejudicial testimony against him, as described in his second assignment of error. The issue is that "[w]hen a claim of ineffective assistance of counsel is based on counsel's failure to file an objection or file a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success." *State v. Jones*, 2019-Ohio-2134, ¶ 52 (10th Dist.) (citing cases). "If the objection or motion would not have been successful, then the appellant cannot prevail on an ineffective assistance claim." *Id.*

{¶ 53} Similarly, whether to move for a mistrial or request a curative jury instruction is a matter of trial strategy. *State v. Lauderdale*, 2024-Ohio-481, ¶ 55 (2d Dist.), citing *State*

*v. Jenkins*, 2001 WL 848582, *6 (2d Dist. July 27, 2001) (holding that trial counsel's decision not to request a mistrial or curative jury instruction "involved matters of trial tactics, on which trial counsel's decisions must be given broad deference"), and *State v. Zeune*, 2011-Ohio-5170, ¶ 37 (10th Dist.) ("[t]he decision not to request a mistrial is one of trial strategy best left to trial counsel"), citing *State v. Seiber*, 56 Ohio St.3d 4, 12 (1990).

**{¶ 54}** Again, Bankston has not persuaded us that a motion for mistrial had a reasonable probability of success. As set forth above in his second assignment of error, the trial court instructed the jury that any stricken statements were not evidence and were required to be treated as never heard. The court further instructed the jury not to speculate as to why the court sustained an objection to any question. Under these circumstances, Bankston has not demonstrated that a motion for a mistrial would have been successful. Defense counsel's decision not to request a mistrial involved matters of trial tactics and must be given broad deference. Since a debatable decision concerning trial strategy cannot form the basis of an ineffective assistance of counsel claim, Bankston's claim that his trial counsel was ineffective for failing to motion for mistrial lacks merit.

**{¶ 55}** Bankston's third assignment of error is overruled.

*D.    Fourth Assignment of Error*

**{¶ 56}** In his fourth assignment of error, Bankston argues that the trial court erred in sentencing him because its sentences could not be either concurrent or consecutive. He asserts that his sentences for both charges had to run concurrently, as the trial court failed to specify that the jail terms were to be served consecutively. The State does not object to remanding this matter for clarification as to sentencing.

**{¶ 57}** R.C. 2929.41(A) requires concurrent sentences of misdemeanors unless an exception under R.C. 2929.41(B) applies. "A jail term or sentence of imprisonment for a

19

misdemeanor shall be served consecutively to any other prison term, jail term, or sentence of imprisonment *when the trial court specifies that it is to be served consecutively* or when it is imposed for a misdemeanor violation of section 2907.322, 2921.34, or 2923.131 of the Revised Code." (Emphasis added.) R.C. 2929.41(B)(1).

{¶ 58} "'[A] trial court in a misdemeanor case is not required to make any specific findings before imposing consecutive sentences.'" *State v. Martin,* 2024-Ohio-2383, ¶ 8 (6th Dist.), quoting *State v. Johnson,* 2019-Ohio-4613, ¶ 32 (6th Dist.). However, it must specify that the jail terms being imposed are to be served consecutively. *Conneaut v. Fromknecht*, 2024-Ohio-1119, ¶ 10 (11th Dist.), quoting *State v. Fromknecht*, 2023-Ohio-4604, ¶ 7 (11th Dist.), quoting *State v. Henson*, 2021-Ohio-38, ¶ 17 (12th Dist.).

{¶ 59} We agree with Bankston that the trial court did not specify that his sentences were to be served consecutively. The court was required to impose his sentences concurrently, but the court did not specify whether the sentences were concurrent or consecutive. Under these circumstances, we conclude that the trial court erred in sentencing Bankston and sustain his assignment of error. We reverse in part and remand this matter for the trial court to specify that Bankston's sentences are to run concurrently. Consistent with this determination, the trial court must amend its sentencing entry to reflect that the additional three-day jail sentence Bankston was ordered to serve upon his trespass conviction must run against the balance of the suspended jail sentence imposed upon his obstructing official business conviction.

### III.    Conclusion

{¶ 60} The trial court's judgment is reversed in part and remanded solely for the purpose of clarifying sentencing as set forth above. The trial court's judgment is affirmed in all other respects.

. . . . . . . . . . . . .

TUCKER, J., and LEWIS, J., concur.